# In the United States Bankruptcy Court
## for the
## Southern District of Georgia
### Savannah Division

FILED at 9 O'clock & 50 min a.M.
Date July 26, 2007
Samuel L. Kay, Clerk
United States Bankruptcy Court
Savannah, Georgia    CR

| | |
|---|---|
| In the matter of: ) | |
| ) | Chapter 7 Case |
| MELISSA LYNN LIGHTSEY ) | |
| ) | Number 06-40896 |
| *Debtor* ) | |

## MEMORANDUM AND ORDER ON THE
## UNITED STATES TRUSTEE'S MOTION TO DISMISS

The United States Trustee (the Trustee) has filed a Motion to Dismiss Pursuant to Section 707(b) in this case. *See* Dckt. No. 21 (December 18, 2006). A hearing on this matter was held on April 4, 2007. *See* Dckt. No. 27 (April 4, 2007). Both parties submitted post-hearing briefs in support of their arguments. *See* Dckt. No. 31 (May 4, 2007) (Trustee's brief); Dckt. No. 32 (May 4, 2007) (Debtor's brief); Dckt. No. 36 (May 21, 2007) (Trustee's reply brief). Upon reviewing the arguments and evidence presented by the parties, I make the following Findings of Fact and Conclusions of Law.

### FINDINGS OF FACT

The Debtor filed this Chapter 7 case on July 6, 2006. Although she had no secured debt, the Debtor listed $21,427.74 in unsecured debt. Of that unsecured debt, $13,000.00 was owed to Cavalry Portfolio Services, LLC (Cavalry). Cavalry's claim against the Debtor is a deficiency claim from an automobile loan taken out by the Debtor during a

prior marriage. *See* Dckt. No. 32, p. 1 (May 4, 2007). The Debtor relied upon her then-husband for assistance in meeting her monthly bills, including the automobile loan. The marriage fell apart, however, and the Debtor could not afford to make the payment on the loan. As a result, the automobile was repossessed and sold, leaving the deficiency claim. Although the Debtor remarried and started anew with Don Lightsey, it was Cavalry's pursuit of this deficiency claim through the garnishment of her wages that prompted her to file this Chapter 7 case. Mr. Lightsey is not a co-debtor, and he is not responsible for any of the debts scheduled in this case.

In filing its motion to dismiss, the Trustee contends that the proper calculation of the Debtor's Current Monthly Income (CMI), as defined by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), leads to the conclusion that the filing of her Chapter 7 bankruptcy is presumed abusive under 11 U.S.C. § 707(b)(2)(A)(i).[1] Furthermore, in the alternative, the Trustee contends that the Debtor's Chapter 7 case should be dismissed pursuant to Sections 707(b)(3)(A) and (B) for bad faith and because the totality of the circumstances of the Debtor's financial situation demonstrates abuse. *See* Dckt. No. 21, p. 5 (December 18, 2006). The Debtor responds to the Trustee's motion by contending that the Trustee's calculations are incorrect and that the presumption of abuse under Section 707(b)(2)(A)(i) does not arise in this case. *See* Dckt. No. 32, p. 4 (May 4, 2007).

---

[1] Hereinafter, all Section references are to Title 11 of the United States Code.

At the April 4, 2007, hearing, the Trustee presented a set of figures calculating the Debtor's CMI on the petition date as well as on the hearing date. In both calculations of CMI, the Trustee totaled the Debtor and Mr. Lightsey's total household expenses and then subtracted the amount paid for by the Debtor to determine the amount of household expenses paid for by Mr. Lightsey. Once Mr. Lightsey's contributions to household expenses were known on the petition date and on the hearing date, those numbers were subtracted from his gross monthly income during those time periods to determine his marital adjustment, the amount not included in the Debtor's CMI. According to the Trustee, these numbers result in a CMI, whether on the petition date or on the hearing date, that leads to a presumption of abuse by the Debtor under Section 707(b)(2)(A)(i).

At the hearing, the Debtor's counsel stipulated that the Trustee's calculations of the Debtor's CMI were correct, assuming that Mr. Lightsey's contributions and income were included in calculating the Debtor's CMI. See Dckt. No. 27 (April 4, 2007). If those calculations are accepted, the presumption of abuse arises. Therefore, the only dispute before the Court is whether Mr. Lightsey's contributions to household expenses are to be included in the Debtor's CMI and, if so, whether the presumption of abuse has been rebutted.

## CONCLUSIONS OF LAW

After a notice and a hearing, a court may dismiss a Chapter 7 case filed by

an individual debtor whose debts are primarily consumer debts or, with the debtor's consent, convert such a case to Chapter 11 or 13 if it finds that the granting of relief would be an abuse of the provisions of Chapter 7. 11 U.S.C. § 707(b)(1). A presumption of abuse arises "if the debtor's current monthly income (CMI) reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 is not less than the lesser of (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,575, whichever is greater; or (II) $10,950." 11 U.S.C. § 707(b)(2)(A)(i).

As a result of BAPCPA, CMI is a defined term under the Bankruptcy Code. Under Section 101(10A), a debtor's CMI is "the average monthly income from all sources that the debtor receives . . . without regard to whether such income is taxable income, derived during the 6-month period ending on the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by [Section 521(a)(1)(B)(ii)]." 11 U.S.C. § 101(10A)(A)(i). This amount includes "any amount paid by any entity other than the debtor . . . on a regular basis for the household expenses of the debtor or the debtor's dependents." 11 U.S.C. § 101(10A)(B). At the heart of the Debtor's argument is the contention that her husband's contributions to household expenses should not be included in her CMI.

I conclude that BAPCPA's definition of CMI includes the amounts a non-debtor spouse regularly contributes to a debtor's household expenses. The non-debtor spouse

regularly contributing to those household expenses is such an "entity" whose contributions constitute CMI. See 11 U.S.C. § 101(10A)(B). As stated by the court in In re Quarterman, 342 B.R. 647, 651 (Bankr. M.D. Fla. 2006):

> [I]n a single case, a debtor's spouse's income shall be included in the debtor's current monthly income to the extent that it is paid "on a regular basis for the household expenses of the debtor or the debtor's dependents." Thus, based upon the explicit language of [Section 101(10A)], current monthly income does not include *all* the income of the non-debtor spouse, but rather only amounts expended on a regular basis for household expenses. If income is not (1) expended regularly (2) on household expenses, then it is not included in the debtor's current monthly income.

My colleague in the Southern District of Georgia has reached a similar conclusion. See eCAST Settlement Corp. v. Campbell (In re Campbell), Case No. 06-60280, Dckt. No. 39, pgs. 10-11 (Bankr. S.D. Ga. Mar. 29, 2007) (Dalis, J.) (concluding that a debtor who lived with his mother must include any amounts she paid on a regular basis for the debtor's household expenses in calculating his CMI, as the mother qualified as "any entity" under Section 101(10A)(B)).

The amounts paid by an entity on a regular basis for the debtor's household expenses is a fact-specific inquiry. In re Travis, 353 B.R. 520, 526 (Bankr. E.D. Mich. 2006). In this case, the Trustee and Debtor agreed on the figures for the incomes of the

Debtor and Mr. Lightsey, the total amount of the Debtor and Mr. Lightsey's regular household expenses, and the apportionment of the total household expenses between the Debtor and Mr. Lightsey. *See* Dckt. No. 30 (April 4, 2007). The Debtor's counsel affirmed that stipulation at the April 4, 2007, hearing. *See* Dckt. No. 27 (April 4, 2007). In the Eleventh Circuit, it is well-established that parties are bound by their attorneys' stipulations. Laird v. Air Carrier Engine Serv., Inc., 263 F.2d 948, 953 (5th Cir. 1959).[2] Therefore, because I conclude that Mr. Lightsey's contributions to the Debtor's household expenses are included in the calculation of her CMI, and in light of the stipulation as to the amounts he regularly contributed, the presumption of abuse under Section 707(b)(2)(A)(i) arises in this case.

The Debtor may rebut the presumption of abuse, but only "by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that [sic] justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative." 11 U.S.C. § 707(b)(2)(B)(i). To establish "special circumstances," a debtor must provide an itemization of each additional expense or adjustment of income and provide "(I) documentation for such expense or adjustment to income; and (II) a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable." 11 U.S.C. § 707(b)(2)(B)(ii). The Debtor's detailed explanation centered on

---

[2] Decisions of the United States Court of Appeals for the Fifth Circuit prior to September 30, 1981, are binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981).

the nature and timing of the large deficiency judgment, which predated her present marriage.

I conclude that the facts of this case do not satisfy the "special circumstances" exception. The essence of the Debtor's argument is that it is inequitable for her to have this case dismissed or be forced into a Chapter 13 case in which Mr. Lightsey will be forced to assist in paying a debt from her previous marriage on a vehicle that she no longer owns. This contention is compelling, but I conclude that it does not fit within the special circumstances exception. The exception does not permit every conceivable unfortunate or "unfair" circumstance to rebut the presumption of abuse,[3] but includes only

---

[3] For example, I reject the notion that student loan payment obligations can be utilized to adjust a debtor's expenses upward to reduce net income and avoid the means test threshold because they are non-dischargeable debts. *Contra* In re Knight, 2007 WL 1874420, at *8 (Bankr. N.D. Ga. 2007) (concluding that student loan debts are unique and qualify as a special circumstance due to there being "no reasonable alternative to continuation of the payments in order to avoid unfair economic harm"); In re Delbecq, 2007 WL 1408711 (Bankr. S.D. Ind. 2007).

If the repayment of these obligations becomes onerous due to catastrophic illness, military deployment/activation, or similar post-contractual disasters or misfortunes, Section 707's special circumstances exception may apply because of those factors, not because of the student loan obligation's nature as a non-dischargeable debt. If non-dischargeability was the standard for a special circumstance, Congress would have said so. Those courts concluding that "special circumstances" include non-dischargeable student loan obligations arguably will have to apply this standard to every other non-dischargeable obligation, from long-term auto lease payments that exceed the IRS standards [Section 1322(b)(5)] to debts arising not only from student loans but also from fraud, embezzlement, DUI, and the like. *See* 11 U.S.C. §§ 523 and 1328(a). Every one of these non-dischargeable obligations could qualify as debts for which a debtor has no reasonable alternative but to continue payments to avoid economic harm, and there is no suggestion in Section 707(b)(2)(B) that courts have been delegated the policy decision of deciding that some non-dischargeable debts are "good" and some are "bad" so as to permit treating some but not all as a "special circumstance."

The premise that educational loans are a "special circumstance" for which there is no alternative but to raise a debtor's expenses by a sufficient amount to escape the means test presumption, in order to avoid long-term economic harm, is misplaced. Student loan repayments are authorized by Code-based provisions that authorize debtors to maintain regular student loan payments as part of a Chapter 13 plan and avoid the perceived economic hardships recited by Knight and Delbecq. *See* 11 U.S.C. § 1322(b)(5); American Gen. Fin., Inc. v. Alexander (In re Alexander), 1997 WL 33476360 (Bankr. S.D. Ga. 1997) (citing In re Salyer, 1991 WL 11002298 (Bankr. S.D. Ga. 1991)). Chapter 13 repayment provides the "reasonable alternative" to engaging in a strained reading of what constitutes a special circumstance in order to adjust the income or expense calculations of the means test.

I recognize that this finding may force debtors into a Chapter 13 case which yields no greater dividend to

those circumstances that cause higher household expenses or adjustments of income "for which there is no reasonable alternative," i.e., they are unforeseeable or beyond the control of the debtor  See In re Delunas, 2007 WL 737763, at *2 (Bankr. E.D. Mo. 2007) (concluding that the Chapter 7 debtors did not rebut Section 707's presumption of abuse as they failed to demonstrate "special circumstances" that justified monthly rent payments in excess of their allowable deduction for housing); In re Sparks, 360 B.R. 224, 230 (Bankr. E.D. Tex. 2006) ("[The special circumstances exception] must be strictly construed to allow only those expenses which are truly unavoidable to the debtor."); In re Tranmer, 355 B.R. 234, 251 (Bankr. D. Mont. 2006) ("Section 707(b)(2)(B)'s 'special circumstances' contemplates circumstances beyond a debtor's reasonable control.").[4] As one court cogently

---

unsecured creditors than a Chapter 7 liquidation, but Congress made a policy decision that these debtors still must follow the Chapter 13 path, and there are indeed reasons why a low dividend Chapter 13 case may still provide a benefit that achieves the congressional purpose. One of these is the potential of modification during the life of a plan to increase the dividend to creditors. See In re Johns, 342 B.R. 626, 629 (Bankr. E.D. Okla. 2006) (concluding that a potential zero percent Chapter 13 dividend is not a "special circumstance"); In re Castle, 362 B.R. 846, 852 (Bankr. N.D. Ohio 2006) (stating that "the Court cannot find that the Debtors' situation, whereby they may presently not have the funds available to formulate a meaningful Chapter 13 repayment plan, is a sufficient basis to make an exception to the 'means test' promulgated by Congress").

[4] BAPCPA's legislative history supports this conclusion:

[U]nder the special circumstances provision, the debtor could explain in the debtor's petition why an additional allowance in excess of the amounts allowed under the Internal Revenue Standards was reasonable and necessary. As a practical matter, if the costs for gas have increased significantly over the costs for gas used by the Internal Revenue Service, the excess costs of gasoline over the IRS standard should and would be allowed under the special circumstances provision. 147 Cong. Rec. S2363 (remarks of Senator Charles Grassley).

[BAPCPA] has a safeguard that will allow judges to consider extenuating circumstances in each bankruptcy case. After determining this means test calculation, the judge can then take any "special circumstances" into consideration before making a decision to shift the debtor into Chapter 13. This will allow judges to consider cases where *catastrophic illnesses or other unexpected financial calamities* that have impacted a family or individual to the point where their debts are too heavy a load to carry. 151 Cong. Rec. S2470 (remarks of Senator Ben Nelson) (emphasis added).

[BAPCPA's means test] includes a special circumstances safety valve that allows debtors to adjust their income or expenditures based on *unforeseen circumstances* such as military activation and deployment or unexpected and catastrophic medical conditions. 151 Cong. Rec. S1787 (remarks

observed:

> Under the statutory interpretation canon of *ejusdem generis*, a court is to limit the sphere of permissible "special circumstance" to one's having such similar traits and characteristics. This interpretive doctrine, meaning literally "of the same kind," holds that a court is to interpret legislatively provided examples of a specific nature as typical of the general category covered. U. S. v. Parson, 955 F.2d 858, 869 fn. 15 (3rd Cir. 1992).
>
> The common traits given in the examples provided by [Section 707(b)(2)(B)(i)], however, simply do not match what the Debtors seek to do.

Castle, 362 B.R. at 851.

Subjecting the Debtor's current CMI to repayment of the deficiency claim is not such a circumstance. To qualify, the "special circumstance" must affect a debtor's ability to repay because there are "additional expenses" or a reduction in CMI, and there must be no reasonable alternative available to the debtor to avoid such extra expense or reduction in income. *Cf.* In re Heath, 2007 WL 1982194 (Bankr. E.D. Mich. 2007) (reduction in income due to disability); In re Littman, 2007 WL 1957175 (Bankr. D. Idaho 2007) (post-petition court-ordered support); In re Armstrong, 2007 WL 1544591 (Bankr. N.D. Ohio 2007) (maintenance of separate household to preserve status of custodial parent); In re Batzkiel, 349 B.R. 581 (Bankr. N.D. Iowa 2006) (extraordinary commuting expenses). My

---

of Senator Orrin Hatch) (emphasis added).

conclusion is in harmony with the language of Section 707(b)(2)(A)(ii)(I), which states that "[n]otwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts." Whether in this unartfully drafted statute the term "clause" refers, as in normal usage, to part of a sentence (in which case the "notwithstanding" language would be meaningless), or it applies to all of Section 707 or only some subsection thereof, it conveys clear congressional intent that "payments for debts" are categorically distinct from those living expenses whose extraordinary nature may qualify as a special circumstance. Only documented income reductions or unusual living expenses, excluding debt repayment, qualify. Because I find that the special circumstances exception has not been satisfied in this case, I conclude that the Debtor has not rebutted the presumption of abuse.

This result is unpleasant and may be an economic strain on the Debtor, but it is part of the benefit of the bargain she made when she signed the note. I agree with her that the circumstances prompting the filing of this bankruptcy case are unfortunate and arguably unfair. The Debtor's testimony at the April 4, 2007, hearing, including her statement that she seeks only to improve her life following her prior marriage, was credible and compelling. In addition, there is no evidence that Mr. Lightsey participated in her decision to incur any of her scheduled debts, including the claim owing to Cavalry. Unfortunately, however, BAPCPA's formulation of a debtor's CMI is mechanical and leaves little discretion to the courts in adjusting those calculations, even in a case where a debtor

appears to be using the bankruptcy process for a legitimate fresh start.

Judges are compelled to comply with and interpret the Bankruptcy Code as it is written by Congress, and the Code requires that I find that the presumption of abuse has not been rebutted. The Debtor should understand that there is no evidence in this case of bad faith or inequitable conduct, in the conventional sense, on her part, nor is there any suggestion by this ruling that she or Mr. Lightsey engaged in misconduct. Rather, they have been ensnared by a formula created by Congress to weed out others who cannot claim the same degree of honesty and fair dealing with their creditors.

## ORDER

Pursuant to the foregoing, IT IS THE ORDER OF THIS COURT that this Chapter 7 case will be DISMISSED unless the Debtor moves to convert to Chapter 11 or 13 within thirty (30) days.

_____
Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia
This 25th day of July, 2007.